UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ASSOCIATION OF INDEPENDENT GAS ) <br> STATION OWNERS, represented by ) <br> WEST MORELAND SERVICE INC. d/b/a ) <br> GO WEST MART, GEORGE MINKEVICH, ) <br> and ED MONTGOMERY, ) <br>                                                 ) <br>         Plaintiff(s),                     ) <br>                                                 ) <br> vs.                                          ) <br>                                                 ) <br> QUIKTRIP CORPORATION,        ) <br>                                                 ) <br>         Defendant(s).                  ) | Case No. 4:11CV2083 JCH |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss, filed on April 16, 2012. (ECF No. 12). This matter is fully briefed and ready for disposition.

**BACKGROUND**[1]

---

[1] The facts in the Court's background section are taken directly from Plaintiff's Complaint (ECF No. 2). Defendant has not yet filed an Answer to Plaintiff's Complaint.

Plaintiff Association of Independent Gas Station Owners ("Plaintiff" or "AIGO")[2] is an association whose members consist of owners of retail gas stations in the St. Louis metropolitan area. (Complaint, ECF No. 2, ¶ 1). West Moreland Service, Inc. d/b/a Go West Mart, George Minkevich, and Edward Montgomery are independent owners of gas stations in the St. Louis metropolitan area and are members of and serving as representatives of AIGO. (Id., ¶ 2). Defendant QuikTrip Corporation ("Defendant" or "QuikTrip") buys gasoline directly from major oil companies and distributes the gasoline to the public through multiple retail gas station operations in the St. Louis metropolitan area. (Id., ¶ 3).

According to Plaintiff, Defendant began engaging in a "price war" with gas station owners in the St. Louis metropolitan area starting on July 1, 2011. (Id., ¶ 6). The "price war" resulted in Defendant posting reduced pricing changes for its gasoline on almost a daily basis, at times changing its posted gasoline prices several times in the course of a day. (Id.). Defendant priced its gasoline at a price lower than Defendant's costs, forcing Plaintiff's members to lower retail prices for gasoline below their costs in order to maintain customers. (Id., ¶¶ 7, 8, 10). Defendant's pricing has forced

---

[2]The Court notes that Plaintiff's Complaint refers to "Plaintiffs West Moreland Service, Inc. d/b/a Go West Mart, George Minkevich, and Edward Montgomery" as well as "Plaintiffs' allegations" against Defendant. Thus, on its face, Plaintiff's Complaint suggests that West Moreland Service, Inc. d/b/a Go West Mart, George Minkevich, and Edward Montgomery may be bringing claims in their individual capacities against Defendant. However, Plaintiff's Complaint contains no allegations regarding the citizenship of West Moreland Service, Inc. d/b/a Go West Mart, George Minkevich, and Edward Montgomery, and no Disclosure of Corporation Interests Certificate was filed on behalf of West Moreland Service, Inc. d/b/a Go West Mart. Moreover, Defendant's filings in support of its Motion to Dismiss and Plaintiff's Response all ignore any claims West Moreland Service, Inc. d/b/a Go West Mart, George Minkevich, and Edward Montgomery may have in their individual capacities. Finally, several other filings with the Court refer solely to "Plaintiff Association of Independent Gas Station Owners." (See Civil Cover Sheet, ECF No. 2-2; Notice of Process Server, ECF No. 3; and Alias Summons in a Civil Action, ECF No. 6). Therefore, the Court finds West Moreland Service, Inc. d/b/a Go West Mart, George Minkevich, and Edward Montgomery are only serving as representatives of Plaintiff AIGO and are not bringing individual claims against Defendant, and the Court will refer to AIGO as the only plaintiff in this matter.

independent gas station owners out of the St. Louis marketplace.  (Id., ¶ 12).  Plaintiff alleges Defendant has engaged in this "price war" to dominate the marketplace in a manner that would allow Defendant to recoup any losses incurred as a result of selling gasoline below Defendant's costs.  (Id., ¶ 11).

Plaintiff filed this action in this Court on December 2, 2011, on the basis of subject-matter jurisdiction.  Plaintiff's Complaint contains three counts: Count I alleges a violation of the Robinson-Patman Act, 15 U.S.C. § 13; Count II alleges a violation of the Sherman Act, 15 U.S.C. § 2; and Count III alleges a violation of the Missouri Motor Fuel Marketing Act ("MMFMA"), MO. REV. STAT. § 416.655.  As indicated above, Defendant filed its Motion to Dismiss on April 16, 2012.  Defendant argues Plaintiff's Complaint should be dismissed under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.  The Court finds it unnecessary to discuss Defendant's other arguments in favor of dismissal, as it finds the issue of standing dispositive.

**STANDARD**

The Eighth Circuit has held that "Article III of the United [States] Constitution confines the federal courts to adjudicating actual cases and controversies." Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001) (internal quotations and citation omitted).[3]  "'To satisfy the case or controversy requirement of Article III, which is the irreducible constitutional minimum of standing, a plaintiff must, generally speaking, demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.'" Oti Kaga, Inc. v. South Dakota Housing Development Authority, 342 F.3d 871, 878 (8th

---

[3] "Article III standing is a threshold question in every federal court case." United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003).

- 3 -

Cir. 2003) (quoting Bennett v. Spear, 520 U.S. 154, 162,(1997)) (internal quotations omitted); see also Potthoff, 245 F.3d at 715.  Defendant's standing argument thus implicates Federal Rule of Civil Procedure 12(b)(1), because "if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." ABF Freight System, Inc. v. International Broth. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011) (citing Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002)).

. v. United States, 580 F.2d 302, 306 (8th Cir. 1978), cert. denied, 439 U.S. 1070 (1979).

## DISCUSSION

### I. Lack of Standing Under Rule 12(b)(1)

Defendant argues Plaintiff lacks standing to bring the claims in Plaintiff's Complaint, as Plaintiff has suffered no injury so as to sustain an individual claim and cannot bring a claim in a representative capacity.  The Court finds Plaintiff lacks standing in both an individual and a representative capacity, and therefore the Court need not reach Defendant's arguments under Rule 12(b)(6).

#### A. Counts I and II

##### 1. Individual Standing

As noted above, to establish standing, a plaintiff must demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.  Oti Kaga, 342 F.3d at 878.  "Injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"  Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Here, Plaintiff has failed to show that it has suffered any injury in fact so as to grant it standing to pursue its claims on an individual basis.  See Associated Gen. Contractors of N. Dakota v. Otter

Tail Power Co., 611 F.2d 684, 687 (8th Cir. 1979).[4]  Plaintiff is an unincorporated association whose members consist of owners of retail gas stations. (Complaint, ¶ 1).  While Plaintiff's members may operate retail gas stations, Plaintiff does not operate retail gas stations on its own behalf.  The allegations in Plaintiff's Complaint show that any purported price-fixing by Defendant damages Plaintiff's members but does not damage Plaintiff.  Therefore, Plaintiff has not shown any injury personal to Plaintiff, and Plaintiff has not made out a "case or controversy" so as to satisfy the requirements of Article III.  See Otter Tail, 611 F.2d at 687.

### 2. Representational Standing

The Eighth Circuit Court of Appeals recognizes that associations may bring actions in a representational capacity for injunctive relief under the Sherman Act.  See Otter Tail, 611 F.2d at 690.  The Eighth Circuit has found that the provision of the Sherman Act offering treble damages for past violations of antitrust laws is traditionally unavailable for associations suing in a representative capacity.  Id. (citing Hawaii v. Standard Oil Co. of Cal., 405 U.S. 251 (1972); Buckley Towers Condominium, Inc. v. Buchwald, 533 F.2d 934 (5th Cir. 1976); Nassau Cty. Ass'n of Ins. Agts., Inc. v. Aetna Life & Cas. Co., 497 F.2d 1151 (2d Cir.) (1974)).  The provision authorizing injunctive relief from the threatened harm of prospective or ongoing violations, however, has a more lenient standing doctrine that permits associations to seek injunctive relief .  Id. at 690-91.

In Otter Tail, the Eighth Circuit held that an association of general contractors ("the AGC") lacked standing in both an individual and representational capacity to bring a claim for violations of the Sherman Act.  Id. at 687, 690-91.  The AGC challenged a labor agreement covering all

---

[4]While the Eighth Circuit's decision in Otter Tail was decided under the predatory-bidding framework of Sherman Act, the Court finds Plaintiff's claims under the predatory-pricing framework of the Robinson-Patman Act are subject to the same standing analysis.  See Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc., 549 U.S. 312, 321 (2007) ("Predatory-pricing and predatory-bidding claims are analytically similar.")

- 5 -

construction work to be performed in the building of a large power plant. Id. at 686. The agreement was between the three power companies who owned the project, the AFL-CIO, and several affiliated international unions. Id. The AGC argued that the agreement illegally forced its members, both union and nonunion, to recognize the unions bound by the agreement as the exclusive bargaining agents for their employees on the project site in order to be eligible for work. Id. at 687. Furthermore, the AGC argued nonunion AGC members would be forced into collective bargaining relationships with particular unions in order to be eligible to work on the project. Id.

The court in Otter Tail found that, since the AGC was not itself a contractor and did not seek work on this or any other project, the AGC was not injured in its own right by the agreement and lacked standing on an individual basis. Id. The Court also found that it was a "more difficult question" as to whether the AGC had associational standing to represent the claims of its members in seeking an injunction. Id. at 688. After discussing the "more lenient" standard for representational standing, the court found that the Supreme Court's decision in Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333 (1977), "shed light on the factors that make an association an appropriate one to bring the contemplated litigation." Id. at 690. Specifically, the court noted Hunt found as follows:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Id. (quoting Hunt, 432 U.S. at 343).

Applying these requirements to the case in Otter Tail, the court found (b) and (c) were not met. Id. The court noted that it was unclear that the interest AGC sought to protect, which the court framed as the right to work on the project without having to sign a collective bargaining agreement

- 6 -

with a bona fide union and without having to pay wages and fringe benefits equal to minimum standards, was germane to AGC's purpose. Id. The court also noted that the claim asserted required the participation of the individual members of AGC, and that AGC was "clearly not in a position to speak for its members" as their interests were too diverse to make AGC an appropriate vehicle to litigate their claims. Id.; see also Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc., 772 F.2d 467, 472 (8th Cir. 1985) ("Associational standing is properly denied where, as here, the need for 'individualized proof' so pervades the claims asserted that the furtherance of the members' interests requires individual representation.") (internal citation omitted).

Here, the Otter Tail decision forecloses Plaintiff's claims. Under the test articulated in Hunt, Plaintiff satisfies the first prong of the test, as its members would otherwise have standing to sue Defendant in their own right. The Court finds, however, that Plaintiff has not satisfied the other two prongs. First, Plaintiff has not shown that the interests it seeks to protect are germane to its purpose. Aside from stating that Plaintiff is an unincorporated association whose members consist of owners of retail gas stations "in the St. Louis metropolitan area," Plaintiff has presented no evidence regarding the number of members it has, the location of these members, the types of gas stations owned by its members, or what general interests its organization seeks to serve. While Plaintiff's name indicates its members are "independent," it is unclear if any of its members are affiliated with national corporations or may even be "independent" owner-operators affiliated with Defendant. Thus, it is impossible for the Court to ascertain the purpose of Plaintiff's organization, much less whether interfering with Defendant's ability to price its retail gasoline is germane to that purpose.

Second, the claim asserted by Plaintiff requires the participation of individual members in the lawsuit. Plaintiff's Complaint states that "some members of plaintiff AIGO resisted lowering their price in order to maintain the ability to cover their costs of doing business, but were unable to

compete with QuikTrip's pricing." (Complaint, ¶ 31). Additionally, Plaintiff's Complaint states that its members "have been injured by being forced to sell gas to the public below their costs of doing business, threatening [their] survival in the marketplace." (Id., ¶ 32). Thus, Plaintiff's Complaint indicates that some of its members have been forced out of business by Defendant's allegedly predatory pricing while other members have reduced their prices in an attempt to compete with Defendant. In the absence of individualized proof as to Plaintiff's members' operational costs and business practices, the Court is unable to determine that Plaintiff's members have suffered an injury in fact that is fairly traceable to Defendant's actions. Thus, Counts I and II of Plaintiff's Complaint must be dismissed for lack of standing.

**B.     Count III**

For the reasons noted above, the Court also finds that Plaintiff has no standing to assert its state law claims under the MMFMA.

Section 416.615.1 of the MMFMA provides as follows:

It is unlawful for any person engaged in commerce within this state to sell or offer to sell motor fuel below cost as defined in subdivision (2) of section 416.605, if:

(1) The intent of the sale or offer is to injure competition; or

(2) The intent of the sale or offer is to induce the purchase of other merchandise, to unfairly divert trade from a competitor, or otherwise to injure a competitor.

MO. REV. STAT. § 416.615 (2001). Under § 416.635, "Any **person** who is injured in his business or property in a relevant geographic market by reason of anything forbidden or declared unlawful by sections 416.600 to 416.640 may sue therefor in any circuit court of this state in which the defendant or defendants...may be found." Id. § 416.635 (emphasis added).

Plaintiff has failed to show that it has suffered any injury in fact so as to grant it standing to pursue its claims on an individual basis. Additionally, the language in § 416.635 is substantially

similar to the language in 15 U.S.C. § 15(a), which the Eighth Circuit has read as prohibiting associations from bringing claims in a representational capacity. See Otter Tail, 611 F.2d at 689 ("The language of § 16, which permits suit by 'any person, firm, corporation, or association,' also differs from that of § 4, which allows suit by 'any person.'"). Thus, Count III of Plaintiff's Complaint must be dismissed for lack of standing.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED**. An appropriate Judgment will accompany this Memorandum and Order.


Dated this 20th day of July, 2012.


/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE